# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:05CV458-H

KIMBERLY IMAN, individually and as Administratrix of the Estate of ROBERT WAYNE IMAN,

    Plaintiff,

vs.

KEFFER MANAGEMENT CO., LLC., and LIBERTY PONTIAC-GMC TRUCK, INC.,

    Defendants.

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Remand [including argument]" (document #7) filed November 16, 2005; and the "Defendants' Memorandum in Opposition ..." (document #12) filed December 7, 2005. The Plaintiff has not filed a reply brief, and the time for filing a reply has expired.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiff's Motion to Remand, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action seeking damages, that is, unpaid life insurance benefits, pursuant to state law claims for breach of contract and unfair and deceptive trade practices. The Plaintiff Kimberly Iman is a citizen of Mecklenburg County, North Carolina, and the Defendants, Keffer Management Co., LLC., and its subsidiary, Liberty Pontiac-GMC Truck, Inc. (collectively "Liberty"), are respectively a North Carolina limited liability company and a North Carolina corporation engaged in the business of selling automobiles in Mecklenburg County.

Relevant to the pending motion, on March 16, 2004, Liberty hired the Plaintiff's husband, Robert Wayne Iman, as a sales associate. The same day, Mr. Iman was given a copy of Liberty's Employee Handbook, which described, among other things, various benefits available to employees.

According to the Handbook, each Liberty employee who worked more than 30 hours per week (an "Eligible Employee") was covered under a Group Life insurance policy ("Group Life") in the amount of $10,000, at no cost to the employee. An employee became eligible to participate in Group Life at the same time he became eligible for Group Health insurance, that is, the first day of the month following 90 days of continuous employment by the employee.

Additionally, any Eligible Employee could elect to purchase Voluntary Life insurance ("Voluntary Life") in $10,000.00 increments, up to a maximum of $100,000, with the premium deducted from the employee's paycheck. Unlike Group Life coverage, however, the Handbook does not identify any effective date or eligibility date for Voluntary Life.

It is undisputed that on his first day of work, March 16, 2004, Mr. Iman submitted an application for enrollment in Voluntary Life and requested coverage in the amount of $100,000.00, and the Plaintiff alleges that payroll deductions for the insurance premiums were taken from Mr. Iman's paychecks.

Mr. Iman worked for Defendants continuously until June 20, 2004, when he died.

On June 23, 2004, Brenda Johnson, Liberty's Human Resources Manager, sent a letter to the Plaintiff stating that Mr. Iman had both a Group Life policy and a Voluntary Life policy with Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") in a combined amount of $110,000.00, a statement which Liberty now characterizes as "mistaken" and "inaccurately based on the belief that the effective date for coverage [under both policies] was June 16, 2004 [90 days after Mr. Iman began working rather than] ... July 1, 2004," the first day of the month following the 90-day period.

Thereafter, Ms. Johnson prepared claim forms for both Group Life and Voluntary Life, which Jefferson Pilot subsequently denied.

On September 14, 2005, the Plaintiff filed her Complaint in the Superior Court of Mecklenburg County, alleging causes of action for breach of contract and a North Carolina statutory claim for unfair and deceptive trade practices, and expressly basing her claims on the provisions of the Handbook discussed above.

On November 1, 1005, the Defendants removed the state court action to federal court, alleging that both of Plaintiff's claims "relate to" an employee benefit plan covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA") and, therefore, provide a basis for federal question jurisdiction.

On November 4, 2005, the Defendants filed a "Motion to Dismiss" (document #4) and "Memorandum in Support" (document #5).

On November 10, 2005, the Defendants filed their "Consent to Proceed Before A United States Magistrate Judge" (document #6), but the Plaintiff has not indicated whether she consents to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

On November 16, 2005, the Plaintiff filed the subject Motion to Remand this matter to state court, contending without elaboration that her claims do not arise under or relate to ERISA, although she does not dispute that Liberty's employee benefit plan, including the life insurance coverage, is covered by ERISA. The next day, the Plaintiff filed a Motion for Extension of Time to file her response to the Motion to Dismiss until 14 days after the Court rules upon her Motion to Remand.

On December 2, 2005, the undersigned granted the Plaintiff's Motion for Extension of Time. See "Order" (document #11).

The Plaintiff's Motion to Remand has been fully briefed as set forth above and is, therefore,

3

ripe for determination.

## II. DISCUSSION

At the outset, the undersigned notes that the Plaintiff's Motion to Remand is timely. See 28 U.S.C. § 1447(c) (motion to remand must be filed within 30 days of filing of notice of removal and the court shall order remand if removal was improper).

28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The parties seeking federal jurisdiction, in this case, the Defendants, have the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

It is well-established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally"). Because the citizenship of the parties is not diverse, the basis for

federal subject matter jurisdiction, if any, must arise under what is commonly called "federal question" jurisdiction.

Federal subject matter jurisdiction of a plaintiff's state law claims will be proper pursuant to ERISA, and ERISA's provisions will preempt, that is, supersede, those claims, if they "relate to" any employee benefit plan covered by ERISA. See 29 U.S.C. § 1144(a). A state law claim "relates to" an ERISA plan "if it has a connection with or reference to such a plan." Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 377 (4th Cir. 2001) (finding a state law of general application, with only an indirect effect on a pension plan, may relate to that plan for preemption purposes). Accord FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) (ERISA's preemption provisions are broadly construed); and Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 (1983).

In considering whether a plaintiff's state law claim "relates to" ERISA, the district court must "look more closely at the factual nature of his claim than any state law label [the plaintiff] applies to that claim." Griggs, 237 F.3d at 379, citing Boston Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 439-40 (1st Cir. 1996) (explaining that a court cannot make a preemption determination solely "based on the form or label of the law ... the inquiry into whether a state law relates to an ERISA plan or is merely tenuous, remote, or peripheral requires a court to look at the facts of [a] particular case").

As the Defendants point out in their brief, the issue of the existence of federal question jurisdiction in this case is controlled by the Fourth Circuit Court of Appeals' holding in Darcangelo, 292 F.3d at 194-95 (plaintiff's "breach of contract" claim was preempted under 29 U.S.C. §1132 and 29 U.S.C. §1144 even though plaintiff did not specifically reference the ERISA plan but did seek to enforce the terms of the ERISA plan). Indeed, ERISA preemption is even more clear in this case, where the Plaintiff's breach of contract claim expressly seeks "life insurance benefits" – an

unmistakable reference to payments available, if at all, only under the terms of Liberty's employee benefits plan as stated in its Handbook. See Id. at 195 ("action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an ... enforcement mechanism for ERISA... [and] therefore relates to an ERISA plan and [is] preempted"). This is particularly true where a pivotal issue to be decided in this case is whether, as the Defendants contend, Mr. Iman's eligibility for Voluntary Life coverage, which was otherwise undefined, paralleled his eligibility for Group Life as stated in the Handbook.

Moreover, even were Plaintiff able to establish that her breach of contract claim somehow arose separately and apart from Liberty's employee benefit plan as stated in the Handbook, where the remedy she seeks is recovery of unpaid employee benefits, her unfair and deceptive trade practices claim provides a separate basis for exercising federal subject matter jurisdiction. See, e.g., Bedrick v. Travelers Ins. Co., 93 F.3d 149, 151 (4th Cir. 1996) (where failure to pay benefits was only allegation, unfair and deceptive trade practice claim preempted); Powell v. Chesapeake & Potomac Telephone Company of Virginia, 780 F.2d 419, 421 (4th Cir. 1985) (same); and Lippard v. Unumprovident Corp., 261 F.Supp.2d 368, 376-77 (M.D.N.C. 2003) (concluding where core allegation was that employer failed to pay benefits, claim for unfair and deceptive trade practices preempted).

In short, and entirely apart from whether the Plaintiff's claims are meritorious, it is clear as a matter of well settled law that the Plaintiff's state law claims are preempted by ERISA, there is a basis for federal question jurisdiction, removal was proper, and the Plaintiff's Motion to Remand must, therefore, be denied.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Motion to Remand" (document #7) is **DENIED**.

2. The Plaintiff shall file her response brief to the Defendants' Motion to Dismiss (document #4) on or before January 17, 2006. The Defendants' reply, if any, shall be filed within seven days of receipt of the Plaintiff's response.

3. As required by Local Rule 73.1(A), and in light of the fact that there is now a pending dispositive motion in this matter, <u>on or before January 17, 2006</u>, the Plaintiff shall file a "Consent/Refusal To Proceed Before a U.S. Magistrate Judge," indicating whether she consents to jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

**Signed: December 27, 2005**

*Carl Horn, III* (signature)

Carl Horn, III
United States Magistrate Judge